
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEVEN KENNETH STALEY, | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | No. ~~4:99-CV-166-Y~~ |
| | § | |
| BRAD LIVINGSTON, Director, | § | **4-05 CV - 1 8 5 - Y** |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions Division, | § | |
| Respondent. | § | |

## MOTION FOR APPOINTMENT OF COUNSEL
## AND
## STAY OF EXECUTION

TO THE HONORABLE TERRY R. MEANS, UNITED STATES DISTRICT JUDGE:

COMES NOW, STEVEN KENNETH STALEY, Petitioner, by and through undersigned

counsel, and files this his motion for appointment of counsel and stay of execution. In support of this

motion, STALEY shows the court as follow:

1.    STALEY is presently incarcerated on death row, Polunsky Unit, 12002 South FM

350, Livingston, Texas 77351. STALEY is inmate number 999006.

2.    STALEY is restrained of his liberty by BRAD LIVINGSTON, Director of the

Institutional Division, Texas Department of Criminal Justice, under color of judgment and sentence

of death entered in Criminal District Court Number Two of Tarrant County, Texas, on April 25,

1991.

## APPOINTMENT OF COUNSEL

3.    STALEY moves this court to appoint an attorney to represent him in the preparation

and prosecution of an application for a writ of habeas corpus to attack his death sentence. STALEY

makes his request pursuant to 21 *USC* § 848(q)(4)(B) and *McFarland v. Scott*, 512 U.S. 849 (1994).

4.  STALEY makes this request inasmuch as he is an indigent prisoner in state custody under sentence of death. STALEY seeks the appointment of counsel in order to pursue the remedies afforded him pursuant to 28 *USC* § 2254 *et seq.*

5.  The issue which STALEY will raise in his petition for writ of habeas corpus is complex and significant. The issue is whether STALEY is a person who is mentally competent to be executed by the State of Texas.

6.  This court has previously considered STALEY's claim that he is presently incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). That claim was raised in STALEY's original application for writ of habeas corpus filed on May 1, 2000. By memorandum opinion and order signed on September 19, 2003, this court dismissed WITHOUT PREJUDICE STALEY's claim as premature. (Ex. "A"). In that opinion, the court noted that at the time STALEY presented his post-conviction claims in State court, there was no available state process to consider such a claim of incompetency to be executed.

7.  The court expressly ordered that STALEY could re-file this specific claim after such State procedures are exhausted. Thus, the merits of STALEY's claim of incompetence have NEVER BEEN ADDRESSED by the federal courts.

## STAY OF EXECUTION

8.  This court has the power to stay the execution of condemned prisoners whose habeas corpus proceedings are pending before the court. 28 *USC* § 2251.

9.  Although STALEY has not yet filed a successive petition re-asserting his claim of mental incompetence, that is so only because he has not yet exhausted his State remedies under Art.
*
46.05, *supra*. Although significant evidence supports STALEY's claim of present incompetence to

* At 2:30 p.m., Thursday, March 17, 2005, the district court of the State of Texas DENIED Staley's request for a 46.05 hearing. This action exhausts Staley's State remedies. See, ex parte Caldwell, 58 S.W. 3d 127 (Tx Cr App 2000).

*See*, Ex "C" attached hereto.

be executed, a 46.05 hearing has not yet been held or even scheduled. In the meantime, the State

district court has set STALEY's execution for Wednesday, March 23, 2005, at 6:00 o'clock p.m.

It is impossible for the mental health experts appointed by the court to evaluate STALEY to complete

their examinations, prepare their reports before the execution scheduled only days from now. In

addition, it is impossible for counsel for both sides to adequately prepare for such a 46.05 hearing,

including subpoenaing witnesses, consulting with experts, preparing briefs, and presenting a case to

a State district judge in a "final competency hearing" contemplated by Art. 46.05(k), *Texas Code of*

*Criminal Procedure*.

      10.    There are two means by which to commence habeas proceedings and thereby vest a

federal court jurisdiction to grant a 2251 stay:

      a)    file a habeas petition along with an application for a stay; or

      b)    file an application for the appointment of counsel pursuant to 21 *USC* §
            848(q)(4)(B).

      The first option is not available to STALEY for the reasons set out above. The State may –

or may not – conduct a 46.05 hearing before STALEY's scheduled execution date. Even if such a

hearing is conducted, there will not be a meaningful opportunity for counsel to research and present

his claim of present incompetence.

      The second option (the pre-petition situation) is the only federal remedy available to STALEY

at this time. It is the only option which will afford STALEY a full and fair consideration of his claims

as required by the habeas corpus statute and rules.

      11.    When this court dismissed STALEY's premature incompetency claim in 2003, it

clearly intended that STALEY should be given the future opportunity to press that claim in federal

court. Unless this court stays STALEY's impending execution, that will not be possible. A stay, on

the other hand, will insure that STALEY fully exhaust his State remedies and, if necessary, seek federal review. \*

## **PRAYER**

12.     Petitioner STALEY requests that:

a)     the court appoint JACK V. STRICKLAND counsel to represent STEVEN KENNETH STALEY on his application for writ of habeas corpus; and

b)     a stay of execution be granted until further order of the court.

Respectfully submitted,

LAW OFFICES OF JACK V. STRICKLAND
The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Telephone: 817-338-1000
Telecopier: 817-338-1020
e-mail: jvs1943@aol.com


JACK V. STRICKLAND
State Bar No. 19397000

ATTORNEY FOR PETITIONER


\* Staley contends herein that the refusal of the State district court to conduct a live hearing violates not only the express terms of art. 46.05, TX CODE CRIM PRO, but also the minimum due process standards required by Ford v. Wainwright, supra.

THE STATE OF TEXAS                              §

COUNTY OF TARRANT                               §

BEFORE ME, the undersigned authority, on this day personally appeared JACK V. STRICKLAND, who after being duly sworn, deposes and says:

"My name is JACK V. STRICKLAND. I am the same JACK V. STRICKLAND who is the State appointed attorney of record for STEVEN KENNETH STALEY. All of the allegations set forth in this motion are true and correct."


_____
JACK V. STRICKLAND

SWORN TO AND SUBSCRIBED BEFORE ME, this the ___17th___ day of March, 2005.


_____
NOTARY PUBLIC, STATE OF TEXAS



PATRICIA A. HATLEY
Notary Public
STATE OF TEXAS
My Comm. Exp 07/27/2007

<u>CERTIFICATE OF SERVICE</u>

On this the _17_ day of March, 2005, I hereby certify that a true and correct copy of the

foregoing Petitioner's motion for appointment of counsel and stay of execution was forwarded to the

following by placing same in the United States Mail, proper postage affixed, as well as by facsimile

transmission:

1)      Mr. Tom Jones, Assistant Attorney General
Capital Litigation Section
Office of the Attorney General
Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548
Facsimile No. 512-320-8132;

2)      The Honorable Wayne Salvant
Criminal District Court Number Two
401 West Belknap Street
Fort Worth, Texas 76196
Facsimile No. 817-884-1542;

3)      Mr. Troy Cahill, Deputy Clerk
Supreme Court of the United States
1 First Street NE
Washington, DC 20543
Facsimile No. 202-479-3026;

4)      Mr. James Gibson
Assistant District Attorney
401 West Belknap Street
Fort Worth, Texas 76196
Facsimile No. 817-884-1672; and

5)      Mr. Charles Mallin
Assistant District Attorney
401 West Belknap Street
Fort Worth, Texas 76196
Facsimile No. 817-884-1672.



ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 9 2003

CLERK, U.S. DISTRICT COURT
BY_____
        DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEVEN KENNETH STALEY, | § | |
|     *Petitioner,* | § | |
| | § | |
| v. | § | |
| | § | No. 4:99-CV-186-Y |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
|     *Respondent.* | § | |

RECEIVED
10-1-03

## MEMORANDUM OPINION AND ORDER

Texas death row inmate Steven Kenneth Staley, ("Petitioner" and "Staley") has filed a petition for a writ of habeas corpus pursuant to Title 28, United States Code, Section 2254. Respondent is Doug Dretke, the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice ("TDCJ-CID"). For the reasons set forth below, the Court dismisses Staley's first claim for relief, and denies each of the remaining claims in the petition for writ of habeas corpus.

On October 14, 1989, Steven Kenneth Staley murdered Robert Read in the course of a robbery or attempted robbery of a Steak and Ale restaurant in Tarrant County, Texas. A jury convicted Staley of capital murder, and assessed his punishment at death by lethal injection. *State v. Staley*, No. 0387844-A (Crim. Dist. Ct. No. 2, Tarrant County, Tex. April 25, 1991). The conviction and sentence were affirmed on direct appeal. *Staley v. State*, 887 S.W.2d 885 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1020, 115 S.Ct. 1366, 131

**EXHIBIT 4**

L.Ed.2d 222 (1995). Staley subsequently filed an application for writ of habeas corpus in the state trial court on October 14, 1997. (Record of state habeas proceeding, hereafter "SHR" 1 at 2-17.) The trial court found that there were no previously unresolved factual issues material to the legality of Staley's confinement, *Ex parte Staley*, No. C-2-3396-0387884-A (Crim. Dist. Ct. No. 2, Tarrant County, Tex. Jan. 22, 1998), and entered findings of fact and conclusions of law recommending that relief be denied. *Ex parte Staley*, No. C-2-3396-0387884-A (Crim. Dist. Ct. No. 2, Tarrant County, Tex. Mar. 13, 1998). The Texas Court of Criminal Appeals adopted these findings and conclusions and denied relief. *Ex parte Staley*, No. 37,034-01 (Tex. Crim. App. Sep. 16, 1998)(unpublished). Subsequently, the trial court set Staley's execution for March 18, 1999, which was stayed by order of this Court upon application by Petitioner. *Staley v. Johnson*, No. 4:99-CV-186-Y (N.D. Tex., Mar. 5, 1999).

### *Claims*

In four grounds for relief, Staley complains that his execution would constitute cruel and unusual punishment because of his mental incompetence, that the trial court denied him the effective assistance of counsel and a fair trial because anti-psychotic medication was forced upon him and because the trial court failed to define "reasonable doubt" during the jury voir dire, and finally that the prosecutor used a peremptory strike in a racially discriminatory

manner. For the reasons set out below, none of these allegations are sufficient to establish a present right to the relief requested.

## Applicable Law

Staley's petition for a federal writ of habeas corpus was filed after April 24, 1996.[1] Therefore, this proceeding is governed by the terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997). This statute significantly affects federal habeas-corpus proceedings, particularly as to the deference that must be accorded state-court findings.

## Deference Scheme

The AEDPA requires deference in federal review of state determinations of claims that were adjudicated on the merits in state court, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[1] The effective date of the AEDPA.

3

established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).    The Supreme Court has explained that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning.

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, of if it decides a case differently than we have done on a set of materially indistinguishable facts. [Williams v. Taylor, 529 U.S. 362,] at 405-406. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. Id. at 407-408. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one. Id. at 409-410. See also id., at 411 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002); See also, Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001)(hereinafter also "Penry II"). Under the "unreasonable application" analysis, it is not enough that the state court incorrectly applied federal law. To be entitled to relief, Petitioner must show that the "ultimate legal conclusion" reached by the state court was objectively unreasonable. Neal v.

4

*Puckett*, 286 F.3d 230 (5ᵗʰ Cir. 2002), *cert. denied*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

This federal deference, however, applies only to issues that have been adjudicated on the merits in state court. A resolution or "adjudication" on the merits in the habeas-corpus context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *Miller v. Johnson*, 200 F.3d 274, 281 (5ᵗʰ Cir.), *cert. denied*, 531 U.S. 849 (2000); *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). A disposition on independent and adequate state procedural grounds can bar such claim from review in federal court. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). Therefore, procedural defenses asserted against a petitioner's claims must be resolved before the merits of such claims may be considered.

### Incompetence to be Executed

In his first claim for relief, Staley alleges that his execution would constitute cruel and unusual punishment because he is presently incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Respondent counters that relief may not be granted on this claim because Staley failed to exhaust his remedies in the state court as required by 28 U.S.C. § 2254(b)(1). *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). While admitting that he did not

present this claim to the state courts, Staley contends that there was an absence of available state corrective process and that circumstances existed to render such process ineffective to protect his rights. *See* 28 U.S.C. § 2254(b)(1)(B). In particular, Staley contends that, although Texas has since enacted a procedure for such claims in Art. 46.04 of the Texas Code of Criminal Procedure, at the time of his post-conviction proceedings in state court there was no procedure available in Texas to question an inmate's incompetence to be executed other than a "plea" to the Texas Board of Pardons and Paroles, an agency of the executive branch of the State of Texas. (Pet. at 16-17.)

Respondent sharply disputes this and further maintains that no evidentiary hearing is permitted on this claim because Staley failed to develop the factual basis for this claim in state court as required by 28 U.S.C. § 2254(e)(2). (Ans. at 9-12.) Staley responds to such allegation by asserting that "his final descent into insanity did not occur until after his trial, after his direct appeal, and after his state post conviction writ process were all concluded." (Traverse at 2.) Therefore, Staley contends that because a claim of insanity was not available at the earlier time, he cannot be said to have failed to present it.

Although Respondent appears to have the stronger argument, it is unnecessary to resolve this dispute because both parties seem to agree that Staley's first claim should be dismissed without prejudice

6

as premature.  In his answer, Respondent specifically requests such relief. (Ans. at 8.)  In response to this request, Staley announced that he "does not object to this Court now dismissing his *Ford* claim without prejudice as premature, thereby requiring Petitioner to assert his claim in the state trial court pursuant to article 46.04, Texas Code of Criminal Procedure." (Traverse at 4.)

This Court agrees that this matter should not be further explored in this proceeding.  The claim itself does not present a justiciable controversy before this Court.  In *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), the Supreme Court approved of the dismissal of such a claim as premature "not because he had not exhausted state remedies, but because his execution was not imminent and therefore his competency to be executed could not be determined at that time." *See also In re Davis*, 121 F.3d 952, 953 (5th Cir. 1997)("Our court denied the motion without prejudice as premature, because Davis' execution had not been scheduled.")  In light of the affirmative representations of the parties,[2] the Court finds that Staley should be afforded an

---

[2] Staley's announcement appears to concede that this claim is not ripe and that he now has a right under the laws of the state of Texas to pursue this claim. *See also* 28 U.S.C. § 2254(c).  He does not further contend that it now falls within the exception to the mootness doctrine for cases that are capable of repetition, yet evading review.  Such an exception could have applied since a reasonable argument could be made that (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *See Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978, 988, 40 L.Ed.2d 43 (1998).  However, since Staley does not take this position, the Court declines to do so *sua sponte*.

7

opportunity to use the procedures now available at the state level for resolving this claim. Accordingly, Staley's first claim for relief is DISMISSED as premature in accordance with *Stewart v. Martinez-Villareal*, 523 U.S. at 644, without prejudice to the refiling of this claim after such state procedures are exhausted.

### *Forced Medication*

In his second claim for relief, Staley contends that his rights to counsel and a fair trial under the Sixth, Eighth and Fourteenth Amendments were violated by the involuntary administration of antipsychotic medication by the State of Texas during his trial. (Pet. at 18-19.) The forced medication of inmates in pretrial or trial settings has been recognized by the Supreme Court to violate a detainee's right to a fair trial under the Due Process Clause of the Fourteenth Amendment. *See Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). Respondent again counters that relief may not be granted on this claim because Staley failed to exhaust his remedies in the state court, and that since the state court would now consider the claim barred as an abuse of the writ, it should be considered procedurally barred from review in this court. *See* 28 U.S.C. § 2254(b),(c); *O'Sullivan*, 526 U.S. at 842, 119 S.Ct. at 1731; *Coleman v. Thompson*, 501 U.S. at 729, 111 S.Ct. at 2553-54; *Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir.), *cert. denied*, 534 U.S. 945, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001); TEX. CODE CRIM. PROC. ANN art. 11.071 § 5(a). Again, Respondent also maintains that no evidentiary

hearing is permitted on this claim because Staley failed to develop the factual basis for this claim in state court pursuant to 28 U.S.C. § 2254(e)(2).

Similar to his position in the prior claim, Staley does not dispute his failure to present this claim to the state courts. But unlike his prior response, he does not assert any exception under 28 U.S.C. § 2254(b)(1)(B). Instead, he merely emphasizes the extreme nature of the death penalty in making his plea. (Traverse at 4-5.) Although this Court is not unmindful of the severity of the punishment assessed, such fact alone cannot excuse the procedural defaults described above. To hold otherwise would be to invalidate all such procedural defenses in death penalty cases, and frustrate an approved purpose of the AEDPA "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Woodford v. Garceau*, ___ U.S. ___, 123 S.Ct. 1398, 1401, 155 L. Ed.2d 363 (2003).

Although the first procedural defense raised by Respondent normally applies to claims explicitly resolved on procedural grounds by the state courts, it is also available to certain claims barred by a failure to exhaust state remedies. Federal courts will not take up a question of federal law presented in a case 'if the decision of [the state] court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'" *Lee v. Kemna*, 534 U.S. 362, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002)(alteration in original)(quoting *Coleman v. Thompson*, 501 U.S.

9

at 729, 111 S.Ct. at 2553).  This is because of the importance of affording due respect to a state's own laws, and of allowing state courts the first opportunity to correct any mistakes in their own application of federal law.

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism.  . . .  When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, an additional concern comes into play.  . . . Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  . . .  The independent and adequate state ground doctrine ensures that the State's interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731-32.

A state court need not explicitly apply the procedural bar "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1; *Beazley v. Johnson*, 242 F.3d at 264.  This circuit recognizes that the Texas abuse-of-the-writ doctrine has been an adequate state ground to bar federal habeas review since the Texas Court of Criminal Appeals announced strict adherence to this doctrine in February of 1994. *See Emery* v. *Johnson*, 139 F.3d 191, 195-96 (5th Cir. 1997)(citing *Ex parte Barber*, 879 S.W.2d 889, 891 n. 1 (Tex. Crim. App. 1994).

10

In *Barrientes v. Johnson*, 221 F.3d 741, 759 n. 10 (5th Cir. 2000), the Court of Appeals concluded that it should treat Art. 11.071, Sec. 5, of the Texas Code of Criminal Procedure as a codification of the Texas abuse-of-the-writ doctrine. Therefore, this procedural ground is firmly established and regularly followed in Texas.

Because Texas law would now preclude such a successive state habeas claim on adequate state procedural grounds, the claim is subject to procedural bar for failure to exhaust. *See Beazley*, 242 F.3d at 264; Tex. Code Crim. Proc. Ann art. 11.071 § 5(a).  However, the imposition of such a bar remains subject to exceptions applicable to claims resolved by explicit reliance upon such state procedural grounds. *See Beazley*, 242 F.3d at 264.

Even if an independent and adequate state ground exists to support the state judgment, the federal court may consider the claim if the petitioner can demonstrate sufficient cause and prejudice to excuse the procedural default, or that imposition of the bar would result in a fundamental miscarriage of justice.  In *Coleman v. Thompson*, 501 U.S. at 750, 111 S.Ct. at 2656, the Supreme Court concluded its discussion of the development of this rule with the following statement:

> "We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

11

that failure to consider the claims will result in a fundamental miscarriage of justice."

Therefore, to avoid the imposition of such bar, Staley must demonstrate either (1) a sufficient cause for a procedural default of his claim in state court together with actual prejudice resulting from a bar to its consideration now, or (2) that a failure to consider his claim at this point will result in a fundamental miscarriage of justice.

Staley bears the burden of proving such an exception to the application of the procedural bar. In *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000), the Supreme Court stated that "[w]e therefore require a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." (Emphasis in original.) Since Staley has not raised any exception to Respondent's assertion of this procedural bar, and does not specifically present any reason to justify this Court's consideration of such otherwise-barred claims, this Court concludes that no such exception exists here. Therefore, Staley's second claim for relief must be denied on the basis of this procedural bar.

### Failure to define "reasonable doubt"

In his third claim for relief, Staley complains that his rights to the effective assistance of counsel and to a fair trial under the

Sixth and Fourteenth Amendments were violated by the trial court's failure to define the term "reasonable doubt" during the jury voir dire.  In support of this contention, he cites the prospective requirement temporarily imposed by the Texas Court of Criminal Appeals after his case became final, *Geesa v. State*, 820 S.W.2d 154, 164-65 (Tex. Crim. App. 1991), *overruled by* Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000), and the state procedural rule allowing voir dire on such issue. TEX. CODE CRIM. PROC., art. 35.17(b).

The premise of this complaint is unsound.  Federal courts in postconviction habeas-corpus proceedings do not sit to review questions of state law. *See Engle v. Isaac*, 456 U.S. 107, 119-21, 102 S.Ct. 1558, 1567-68, 71 L.Ed.2d 783 (1982)("While they attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions at respondents' trials may have violated state law."); *See also Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000)(referring to "the long-standing principle that federal courts do not sit to review questions of state law."); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.)("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding."), *cert. denied*, 112 S.Ct. 214 (1991).

In reviewing alleged violations of the requirements of voir dire in state-court cases, federal courts are limited to enforcing the commands of the United States Constitution. *Herman v. Johnson*, 98

13

F.3d 171, 174 (5th Circ. 1996), cert. denied, 520 U.S. 123, 117 S.Ct. 1262, 137 L.Ed.2d 341 (1997). The Constitution does not require the states to define reasonable doubt. "The beyond-a-reasonable-doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994). Should the federal courts decide to adopt such a new rule, it would not avail Staley in this proceeding. *See Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); 28 U.S.C. § 2254(d)(1). Therefore, Staley's third claim must be denied.

## *Batson*

In Staley's fourth claim, he contends that the prosecution exercised a peremptory challenge in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

During the voir dire, Staley timely objected to the prosecutor's use of a peremptory challenge to exclude Bettina A. Calvert, an African-American venireperson, from the jury. At that time, Staley argued that the prosecution had excluded 100% of the qualified minority venirepersons from the jury.[3] (SOF 21 at 173-74, 180-71.)

_____

[3] However, it appeared that the defense had challenged more jurors than the prosecution at this point in the proceedings. The plurality opinion of the Texas Court of Criminal Appeals observed, "[p]rior to Calvert only three other African-

14

In response, the prosecution complained that Staley, a Caucasian male, was not yet shown to have a right to raise a *Batson* issue, but that even if he had that right, he failed to present a prima-facie case of discriminatory intent in accordance with a state procedural rule intended to implement *Batson*. (*Id.* at 179-80.)  The trial court initially found that Staley made out a prima-facie case,[4] but later apparently agreed with the prosecution that Staley had not presented a prima-facie case as required by such procedural rules under *Batson*.[5](*Id.* at 178-81.)

American veniremembers were called for examination--two were successfully challenged for cause by appellant, the other was successfully challenged by the State." *Staley*, 887 S.W.2d at 890 (footnote omitted).

[4] The trial court made this finding immediately upon hearing the stipulation concerning the *Batson* objection, "All right. I'll find that the prima facie case has been made, so, we'll hear the explanations." (*Id.* at 178.)

[5] It is not entirely clear whether the trial court made its decision on the basis of a state procedural requirement or simply changed its mind about whether Staley had made out a prima-facie case after all. After the trial court earlier found that Staley presented a prima-facie case and then ordered the prosecutor to explain his reasons, the prosecutor objected, asserting that Staley, a Caucasian male, lacked standing to make a *Batson* claim. The trial court overruled his objection. (*Id.* at 178-80.) Then the prosecutor further objected as follows: .

MR. BART[A]: And I would secondly object that there is absolutely no evidence of any kind whatsoever before the court to support any prima facie finding whatsoever that the State is exercising peremptory challenge (sic) against this juror on the basis of race.

THE COURT:  All right.  And what's the basis of your position on that objection?

MR. BARTA:  That the statute itself on which the challenge is based, Article 35.261, requires the Defendant to offer evidence of relevant facts that tend to show the challenges made by the attorney representing the state were made for reasons based on race.

THE COURT:  Sustained.

MR. McCRARY: Your Honor, may we be heard on that point?  Based on the stipula-tion, we have shown that 100 percent of all of the qualified blacks to this point have been disqualified by peremptory strike of the State.  In fact, the only qualified black at this time is this

15

Even if based upon the state's procedural rule, the merits of Staley's *Batson* claim are properly before this Court.  Article 35.261 of the Texas Code of Criminal Procedure codifies the *Batson* prohibition against using peremptory challenges to exclude potential jurors on the basis of their race.  *See Hill v. State*, 827 S.W.2d 860, 863 (Tex. Crim. App. 1992).  Therefore, this state procedural requirement did not pose such an independent state ground as to preclude review of the federal claim in this court.  Federal courts on habeas-corpus review of state-court convictions "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  *Coleman v. Thompson*, 501 U.S. at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 3476-77, 77 L.Ed.2d 1201 (1983)).  Since this state procedural rule was merely intended to implement *Batson*,

----

> juror.  The others were excused for cause or by agreement or whatever.  But if they're excused for cause, they were disqualified.  Therefore, the only qualified juror to reach this point is this juror.  Therefore, one juror, one juror excused is 100 percent of all qualified blacks to this point.  And that is in the record, that's part of the stipulation.  We had stipulated that the prior blacks were all disqualified and that this black juror is the only juror to have been qualified to this point.
>
> > \*    \*    \*
>
> THE COURT:  All right, then.  I'll sustain the State's objection, but I want to hear the reason anyway.

(*Id.* at 180-81.)

16

and Respondent himself has not claimed any procedural bar, this Court is not precluded from entertaining the merits of Staley's *Batson* claim.

Although the trial court ultimately sustained the prosecutor's objection to its initial finding of a prima-facie case under *Batson*, it wisely required the prosecution to provide reasons for making such peremptory strike. The prosecutor then provided twelve race-neutral reasons for exercising the strike, two of which were found by the trial court to be unsupported by the record.[6] On appeal, a plurality

---

[6] The prosecutor tendered the following explanation:

Number one, this juror indicated both on the questionnaire that she filled out and during her questioning here on voir dire, an opposition to the death penalty based on personal, moral and religious beliefs. And while the juror indicated that she thought that she could fulfill her obligations under the law, the State is of the opinion that she would be impaired in her ability to do that based on her opposition to the death penalty based on those personal, moral and religious reasons.

Secondly, the State could cite the juror's inability on several occasions during her questioning, both by the Court and by the attorneys, to answer direct and clear questions. On one occasion particularly from the Court concerning mitigation evidence and whether she would ever find that death is or is not a proper punishment. (sic)

Third, the State bases this on concern about this juror's reaction to separation sequestered for a period of two and a half to five weeks from her children who the record shows to be 11, 13, and 15.

Fourth, the juror was very nervous and was never able to relax at any time during this process.

Number five, the juror stated that she would require the State to prove both paragraphs of the indictment before she could return a verdict of guilty. At subsequent times, she changed her mind. Either at number one (sic), the juror would be unable to follow the law in terms of requiring the State to prove one paragraph or the other to be true, or, secondly, she was simply unable to understand a very direct question that was put to her and could not adequately reply to it. And for either one of those reasons, the State would exercise its challenge.

Six, the juror works for the father of an attorney who is currently representing the Defendant (sic) in a capital murder case and has worked for him for a number of years and is close to that particular attorney.

Number seven, the juror could not, despite direct questioning, ever articulate what types of cases she things death would be a proper penalty in.

Number eight, this juror works in a restaurant herself and indicated that she has no feelings whatsoever about a crime, and even a capital murder crime, that would be committed in a restaurant.

17

of the Texas Court of Criminal Appeals agreed that the trial court correctly found that the defendant had not made out a prima-facie case under *Batson*.[7] In his concurring opinion, Judge Baird included a more detailed discussion, addressing the reasons tendered by the prosecutor and finding them to be appropriate race-neutral reasons, showing that the peremptory challenge was not used in a racially

---

Number nine, the juror gave a very long period of hesitation when asked whether or not an intentional act would be sufficient for her to convict somebody of a capital murder and subject them to the possibility of the death penalty, and that State believes that this juror has reservations on that issue.

Number ten, twice during the course of the examination of this juror, the State had to challenge the juror for cause and we believe thus (sic), in general, has the potential for some bad feeling against the State even though those challenges were not sustained.

Number eleven, the juror, once again, originally stated that, no matter what the evidence, any time that she had found somebody acted intentionally at the guilt stage of the trial, she would always also find that the person acted deliberately at the punishment phase of the trial. Once again, she changed that answer subsequently, that either the juror could not be fair and follow the law that would be given to her or this is yet another example of her inability to understand the direct questions which were put to her.

Finally, the twelfth reason from the State is that this juror appears to be a very weak willed individual and is unable to maintain any opinion in the face of the questioning or challenge. The State does not believe that she would have the temperament to face the issues that would be put to her in a case of this magnitude.

THE COURT: What was your reason number four?

MR. BARTA (prosecutor): This juror appeared very nervous throughout the entire period of questioning and was never able to relax during any of these proceedings.

THE COURT: I find that your reasons number five and seven are not supported by the record.

(*Id.* at 183-86.)

---

[7] The plurality opinion stated that "in this instance, the *prima facie* showing at the trial court was *only* that the State struck a member of an identifiable racial group. This is not sufficient to meet a defendant's *prima facie* burden for purposes of *Batson*." *Staley*, 887 S.W.2d at 891 (emphasis in original)(footnotes omitted).

18

discriminatory manner.   Together, these opinions constituted the result that Staley's *Batson* complaint should be denied.

The AEDPA "compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001), *cert. denied*, 535 U.S. 982, 122 S.Ct. 1463, 152 L.Ed.2d 461 (2002). Therefore, the critical inquiry is whether the state court's ultimate decision to deny the *Batson* claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

The Supreme Court has ruled that a prosecutor's use of peremptory challenges to exclude a high percentage of minorities from a jury alone can raise a *Batson* question. *Miller-El v. Cockrell*, 537 U.S. 322, ___, 123 S.Ct. 1029, 1042, 154 L.Ed.2d 931 (2003). This suggests that some of the reasoning in the plurality opinion could be considered contrary to the Supreme Court's current interpretation of *Batson*. Even so, the state court's ultimate decision to deny the *Batson* claim was neither incorrect nor unreasonable.

The concurring opinion, which made the plurality into a majority opinion, contained a more thorough analysis of the reasons tendered by the prosecution in support of its peremptory challenge. As stated by the concurring opinion,

> None of the State's explanations indicate that Calvert was struck on the basis of race.   The State's first explanation

19

> dealt with Calvert's general opposition to capital punishment.
> Although Calvert stated that if selected she would follow her
> oath and the law and render a verdict based upon the evidence,
> she further indicated that if she were a legislator voting on
> the propriety of capital punishment she would vote against it.
> These comments "present the precise situation where a peremptory
> challenge is appropriate, *viz:* the prospective juror is not
> challengeable for cause, but the prosecutor does not believe
> the venireperson will be [a] favorable juror for the State."

*Staley*, 887 S.W.2d at 898-99 (concurring)(quoting *Mines v. State*, 852 S.W.2d 941, 946 (Tex. Crim. App. 1992)). The prosecutor tendered twelve apparently race-neutral reasons in support of its exercise of the peremptory challenge, at least one of which found approval in the state appellate court. Staley contends that, outside of the two reasons that the trial court found unsupported by the record, each of the remaining ten demonstrate disparate treatment of similarly situated venirepersons belonging to racial groups different from Mrs. Calvert.

Specifically, Staley contends that the fourth reason, that Calvert was very nervous and never able to relax during this process, was never even made the subject of questioning of any other juror, and that the only other juror volunteering that information, a Caucasian, was not struck. However, the record indicates that it was Calvert who first volunteered that she was nervous. (SOF 21 at 120.) The bare record gives the appearance that the prosecutor then tried to reassure Calvert and that they were going to be doing a lot of talking. (SOF 21 at 121.) Later, the prosecutor asked Calvert if she felt more comfortable after answering some questions. (SOF

20

21 at 130.)  Calvert responded negatively, and stated that she was still nervous.  (*Id.*)  This does not appear to constitute disparate questioning.  Further, the venireperson to which Staley compared Calvert was not similarly opposed to the death penalty, but instead stated, "I think the death penalty is great." (SOF 16 at 85.) Therefore, this does not reveal disparate treatment on the basis of race.

Staley next complains about the third reason tendered in support of the peremptory strike, Calvert's concern over being sequestered and away from her children, in that "the record reveals that Calvert would concentrate on the evidence, although she (like the majority of the jurors, presumably) would rather not serve." (Pet. at 23.) However, the record did not reflect simply that Calvert would rather not serve, but instead that she "would like to be with her family" instead of being kept away. (SOF 21 at 123.)  Again, this was a race-neutral reason supported by the record.  Although not sufficient to form the basis to excuse the juror for cause, it was one of twelve race-neutral reasons contributing to the prosecutor's decision, two of which formed the basis of prior motions to strike the venireperson for cause. (SOF 21 at 134, 151-52.)  Clearly then, Staley has not shown that the result of the state-court denial of his *Batson* claim was either unreasonable or contrary to established Supreme Court precedent.  Staley's fourth claim for relief must be denied.

*Evidentiary Hearing*

In connection with these claims, Staley requested an evidentiary hearing. When there is a factual dispute that, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing, a federal habeas-corpus petitioner is entitled to discovery and an evidentiary hearing. *See Hughes v. Johnson*, 191 F.3d 607 (5th Cir. 1999); *Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1997). The AEDPA raised the standard for obtaining relief on claims governed by 28 U.S.C. § 2254(d) so that now the allegations of the petition must demonstrate that this higher standard can be met before an evidentiary hearing will be warranted. Further, the AEDPA eliminated the requirement of a "full and fair hearing" in state court before according deference to state-court findings. *Valdez*, 274 F.3d at 948.[8] Finally, the AEDPA expressly limits the availability of an evidentiary hearing when the habeas petitioner has failed to develop the factual basis of the claim in the state-court proceedings. *See* 28 U.S.C. § 2254(e)(2). Each of these requirements imposes additional restrictions on the ability of federal courts to grant evidentiary hearings and relief in federal habeas-corpus proceedings.

---

[8] While reaffirming the *Goodwin* standard for the initial grant of an evidentiary hearing, the Fifth Circuit Court of Appeals in *Valdez* stated held that "a full and fair hearing is not a prerequisite to the application of AEDPA's deferential framework." 274 F.3d at 948.

Nothing in the instant case supports the necessity of an evidentiary hearing. The first and second claims are not resolved on their merits: one being dismissed as premature and the other being denied as procedurally barred. The third claim presents no factual dispute requiring a hearing. Although his fourth claim does present a factual dispute, Staley received a full and fair hearing of such claim at the time of his objections. In fact, such claim expressly relies upon facts contained in the record of the voir-dire proceedings in state court, which record is fully adequate to resolve such claim.

### Order

Having concluded that petitioner's first claim for relief should be dismissed as premature, and that each of his three other claims for relief should be denied, it is, therefore, ORDERED that the first claim for relief in the petition for habeas-corpus relief filed by Steven Kenneth Staley be, and it is hereby, DISMISSED as premature without prejudice to the refiling of same, and that each of the remaining claims for relief in said petition be and they are all hereby DENIED.

SIGNED September  19 , 2003.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/rs

23

0387844A

| STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT |
|---|---|---|
| | § | |
| V. | § | COURT NUMBER TWO OF |
| | § | |
| STEVEN KENNETH STALEY | § | TARRANT COUNTY, TEXAS |

## ORDER SETTING EXECUTION

The Texas Court of Criminal Appeals having affirmed the prisoner's conviction, Staley v. State, 887 S.W.2d 855 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1020 (1995), and mandate having issued, the prisoner's conviction is final. The prisoner's original state application for habeas corpus relief was denied by the Court of Criminal Appeals, Ex parte Staley, No. 37,034-01 (Tex. Crim. App. Sept. 16, 1998) (unpublished). This Court then set a date for the prisoner's execution (March 18, 1999), which was stayed. The prisoner's application for a federal writ of habeas corpus having been denied, Staley v. Dretke, No. 4:99-CV-186-Y (N.D. Tex. Sept. 19, 2003) (unpublished), this court enters the following order:

IT IS ORDERED that the prisoner, Steven Kenneth Staley, who has been adjudged guilty of capital murder as charged in the indictment and whose punishment has been assessed by the verdict of the jury and the judgment of the court at death, shall be kept in custody by the Director of the Institutional Division of the Texas Department of Criminal Justice at Huntsville, Texas, until **Wednesday, March 23, 2005**, upon which day, at the Institutional Division of the Texas Department of Criminal Justice at Huntsville, Texas, at any time after the hour of 6:00 p.m., in a room arranged for the purposes of execution, the Director, acting as provided by law, is commanded to carry out this sentence of death by intravenous injection of a substance or substances in a lethal quantity sufficient to cause the death of Steven Kenneth Staley and until

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

DEC 14 2004

TIME _____ 4:37 _____

BY _____ DEPUTY

1

EXHIBIT B

Steven Kenneth Staley is dead, such procedure to be determined and supervised by the Director of the Institutional Division of the Texas Department of Criminal Justice.

The clerk of this court shall issue and deliver to the Sheriff of Tarrant County, Texas, a certified copy of this order and death warrant in accordance with this order, directed to the Director of the Institutional Division of the Texas Department of Criminal Justice at Huntsville, Texas, commanding the Director to put into execution the judgment of death against Steven Kenneth Staley.

The Sheriff of Tarrant County, Texas, is ordered, upon receipt of the death warrant, to deliver the death warrant and a certified copy of this order to the Director of the Institutional Division of the Texas Department of Criminal Justice, Huntsville, Texas.

SIGNED AND ENTERED this the 14TH day of December 2004.

JUDGE PRESIDING

A CERTIFIED COPY
ATTEST: DEC 1 5 2004
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: _____
DEPUTY

2

0387844A

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT |
| | § | |
| V. | § | COURT NUMBER TWO OF |
| | § | |
| STEVEN KENNETH STALEY | § | TARRANT COUNTY, TEXAS |

### ORDER

Having reviewed the pleadings of both parties, and the reports of the two experts in this case (concerning the inmate's competency to be executed), this Court finds that the inmate has not "made a substantial showing of incompetency" under TEX. CODE CRIM. PROC. art. 46.05(g), so as to justify a hearing on this matter. Therefore, this Court denies the inmate's request for a full competency hearing, and all other relief prayed for is denied.

SIGNED AND ENTERED ____3/17_____, 2005.

_____
JUDGE PRESIDING

A CERTIFIED COPY
ATTEST: 3 17 05
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: _____
DEPUTY

**EXHIBIT C**